**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Doug ADAIR, Defendant–Appellant.**

No. 90–9003.

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1992.

Jake Arbes, Atlanta, Ga., for defendant-appellant.

Charles L. Calhoun, Macon, Ga., for plaintiff-appellee.

---

\* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Before FAY and HATCHETT, Circuit Judges, and GIBSON \*, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Doug Adair appeals his conviction for extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. After carefully considering the complaints and arguments raised by defendant Adair, we resolve the issues in favor of the United States, and accordingly affirm the district court for the reasons hereinafter stated.[1]

## I. BACKGROUND

In 1986 Billy Wayne Sullivan devised a scheme to obtain and resell liquor through a club located in Camilla, Georgia. Because it was illegal to sell liquor in Mitchell County, Sullivan approached David Forrester, who was then chief investigator for the Camilla Police Department, and asked for police protection in exchange for cash payments of $100.00. Forrester then contacted Doug Adair, who was then chief of police of Camilla, about Sullivan's offer and they agreed to divide the payments equally in exchange for protecting the illegal activity. Forrester was living with Adair at the time the payments began, and although the majority of the payments went directly to Forrester, two payments were made to Adair at his home.

In mid–1986, Forrester contacted Sullivan's liquor supplier, Jerry Johnson, and solicited payoffs from Johnson in exchange for police protection. Several days later Forrester and Adair visited Johnson and Johnson agreed to supply liquor to the police officers in exchange for their protection. Sullivan then contacted Walter Anderson, the owner of a club in Camilla, and told him about the scheme involving Adair and Forrester. Anderson agreed to purchase liquor from Sullivan and, in exchange for police protection, pay an additional $19.00 for every case of liquor sold at his club.

---

1. Honorable Duross Fitzpatrick, United States District Judge for the Middle District of Georgia.

On January 16, 1990, Adair was charged in a three count indictment: count one charged Adair with protecting cocaine sales and count two charged Adair with protecting illegal liquor sales, both in violation of the Hobbs Act, 18 U.S.C. § 1951; count three charged Adair with conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. Following a jury trial, Adair was acquitted on counts one and three and convicted on count two and sentenced to seven years of imprisonment.

## II. DISCUSSION

Adair challenges four aspects of the proceedings below. First, he contends there was insufficient evidence in the record to support the jury's verdict. Second, Adair argues the district court erred in giving a "deliberate ignorance" instruction to the jury. Third, he argues the district court made an improper ruling regarding the scope of the government's right to cross-examine defense witnesses. Finally, Adair contends the district court erred in refusing to allow the admission of two pieces of evidence. Addressing these contentions seriatim, we find no reversible error.

### A. *Insufficiency of the Evidence*

■ Adair first argues there was insufficient evidence in the record to support the jury's verdict. In reviewing the sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and draw all inferences and credibility choices in favor of the jury's verdict. *United States v. Hollifield,* 870 F.2d 574, 577 (11th Cir.1989). Adair was convicted under the Hobbs Act, which makes it a crime to obstruct or affect interstate commerce by obtaining the property of another through extortionate means. *See* 18 U.S.C. § 1951.[2] "Extortion" is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

■ In a Hobbs Act prosecution of a public official, the government need not prove actual or threatened force, violence or duress because "[t]he coercive element is supplied by the existence of the public office itself." *United States v. Williams,* 621 F.2d 123, 124 (5th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981).[3] Therefore, the government is required to prove only two things: (1) that a public official obtained property from another in exchange for performance or nonperformance of his official duties; and (2) that this extortionate activity affected interstate commerce. *United States v. Sorrow,* 732 F.2d 176, 179–180 (11th Cir.1984).[4] In this case, the government had the burden of proving that Adair obtained money he was not entitled to by virtue of his position as chief of police. *United States v. O'Keefe,* 825 F.2d 314, 319–320 (11th Cir.1987).

■ Viewed in the light most favorable to the government, we hold there is sufficient evidence in the record to support the jury's finding that Adair had participated in a scheme to extort money in exchange for police protection. The record not only indicates that Adair was aware of the scheme and agreed to split the payments equally, but that he received two payments at his home. It was both logical and permissible for the jury to infer that Adair was actively involved in a scheme in which Forrester, Adair's subordinate, induced in-

---

2. 18 U.S.C. § 1951(a) provides:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

3. The Eleventh Circuit, has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981 in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

4. The parties stipulated that the activity affected interstate commerce as required under 18 U.S.C. § 1951.

dividuals to make payoffs in exchange for the non-enforcement of the liqour laws.[5]

## B. *Deliberate Ignorance Instruction*

■ Adair contends the district court erred in giving the jury a "deliberate ignorance" instruction.[6] In determining whether a deliberate ignorance instruction is proper in a particular case, we have held that "it must be based upon facts which would 'point in the direction of deliberate ignorance.'" *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir.1984) (quoting *United States v. Batencort*, 592 F.2d 916, 918 (5th Cir.1979)). The standard is the same whether the evidence is direct or circumstantial. *Holland v. United States*, 348 U.S. 121, 140–41, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). This circuit has recognized deliberate ignorance of criminal activity "as the equivalent of knowledge, and on that basis, the 'deliberate ignorance/conscious avoidance' charge has been accepted by ... courts." *United States v. Peddle*, 821 F.2d 1521, 1524 (11th Cir.1987).

■ Based on the evidence introduced at trial, we hold the district court did not err in giving a deliberate ignorance instruction. The record indicated that Adair and Forrester lived and worked together during the operation of the extortion scheme and their home became the location for the transfer of payments between Sullivan and Forrester. Although Adair was well aware of Forrester's activities, he did not report his suspicions to the Georgia Bureau of Investigation, which was investigating illegal liqour sales in Camilla in early 1986.

## C. *Cross-examination*

■ Adair contends the trial judge erred in ruling it was proper for the government to cross-examine character witnesses about their knowledge of Adair's prior conviction for hindering the apprehension of a felon. Prior to the beginning of the defense's case, the government informed the court that it intended to question any defense witnesses concerning their knowledge of Adair's conviction. Adair claims that the district court's ruling impermissibly prevented him from calling a number of character witnesses that would have testified about Adair's credibility, a critical issue of the case. We disagree.

■ It is well settled that once a witness has testified about a defendant's good character, cross-examination inquiry is allowed as to whether the reputation witness has heard of particular instances of conduct relevant to the trait in question. *See United States v. Glass*, 709 F.2d 669, 673 (11th Cir.1983); *Michelson v. United States*, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948); Fed.R.Evid. 405. Since the reputation witness relates what he has heard, the inquiry sheds light on the reliability of the witness' perceptions about the defendant. *See* Fed.R.Evid. 405 advisory committee's note, par. 4. A trial court's discretion, however, is subject to two limitations: (1) the government must have a good faith factual basis for the incidents raised during cross-examination of the witness; and (2) the incidents inquired about must be relevant to the character traits at issue in the case. *Glass*, at 673 (citing *United States v. Wells*, 525 F.2d 974, 976–77 (5th Cir.1976)).

---

5. This case is distinguishable from *United States v. Evans*, 910 F.2d 790 (11th Cir.1990), *cert. granted*, — U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991), in which we held that "passive acceptance of a benefit by a public official *is* sufficient to form the basis of a Hobbs Act violation if the official knows that he is being offered the payment in exchange for a specific requested exercise of his official power. The official need not take any specific action to induce *the offering of the benefit.*" *Id.* at 796 (emphasis in original).

6. The district court instructed the jury that:
The element of knowledge may be satisfied by inferences drawn from proof that a defen-

dant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.
It is entirely up to you as to whether you find any deliberate closing of the eyes, and any inferences to be drawn from such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

The district court weighed the relevance of the 1978 conviction against the potential prejudice to the defendant and did not abuse its discretion in ruling that the prosecution could question witnesses about the conviction. First, it would have been proper to allow cross-examination of character witnesses as to their knowledge of Adair's conviction in order to show whether the witnesses had adequate knowledge of the Adair's reputation within the community. Second, the government's proposed line of questioning concerning the prior conviction is also relevant to the character traits raised at trial. The Supreme Court envisioned this type of questioning when it held that "[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law had kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." *Michelson*, 335 U.S. at 479, 69 S.Ct. at 220. Because the government satisfied the two limitations placed on the cross-examination of character witnesses, we hold the district court did not abuse its discretion in ruling that the government may cross-examine witnesses concerning Adair's prior conviction.

### D. *Evidentiary rulings*

■ Adair argues the district court abused its discretion by limiting the evidence the defense was allowed to put before the jury. First, Adair contends the district court abused its discretion in refusing to admit police logs into evidence. Adair argues the evidence would have helped the jury determine whether he was involved in the scheme to protect illegal liquor sales. Evidentiary rulings are within the broad realm of judicial discretion and will not be reversed absent an abuse of discretion. *O'Keefe*, 825 F.2d at 319. In deciding not to admit the police logs into evidence, the district court concluded that the logs were not sufficiently clear and understandable to aid the jury in its determination of the issues because they were in code. We hold that while the police logs

may have some relevance in view of the factual situation involved, the district court did not abuse its discretion in refusing to admit the logs into evidence.

■ Adair also argues the district court abused its discretion in refusing to admit Forrester's bank records into evidence. As stated above, these evidentiary rulings are committed to the broad discretion of the district court and will not be reversed absent a showing of abuse of discretion. *O'Keefe*, 825 F.2d at 319. Although arguably Forrester's bank records might have some relevance on the issue that Forrester was not paying the money to Adair, the records are not conclusive and are not relevant to Adair's conviction.[7] Our review of the evidentiary hearing on the admissibility of the records convinces us that the district court's finding was well supported and the district court did not abuse its discretion in refusing to admit the bank records into evidence.

### III. CONCLUSION

We have reviewed the remaining issues raised on appeal and after reviewing the record, we find them to be without merit. The district court committed no error upon which to reverse the conviction and the judgment is AFFIRMED.

---

7. Although the district court did not expressly invoke a rule of evidence in its ruling, we note that although the records might have a small quantum of relevance, we believe admissibility of the records would run afoul of Fed.R.Evid. 403 in that the probability of confusing the jury far outweighs the minimal relevancy of the bank records.