United States Court of Appeals,

Eleventh Circuit.

No. 96-8596.

UNITED STATES of America, Plaintiff-Appellee,

v.

Eddie CASTLEBERRY, Defendant-Appellant.

June 23, 1997

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CR-370-1(WBH), Willis B. Hunt, Judge.

Before BLACK, Circuit Judge, and FAY and ALARCON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

Defendant Eddie S. Castleberry was convicted for violations of the Hobbs Act. On appeal, Castleberry's main contention is that under *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Government must now show a substantial effect, instead of only a minimal effect, on interstate commerce to support a conviction under the Hobbs Act. Castleberry further argues that because the Government's evidence failed to establish a substantial(or even a minimal) effect on interstate commerce, the district court erred in denying his motions under Rule 29 of the Federal Rules of Criminal Procedure. He also claims that the district court erroneously instructed the jury on the interstate commerce element of the Hobbs Act and erred in certain evidentiary rulings. We reject all of Castleberry's arguments and affirm his convictions.

Castleberry was a private attorney in Atlanta, Georgia. Kenneth London was Assistant Solicitor in the Atlanta Traffic Court. As Assistant Solicitor, London prosecuted driving under the

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

influence ("DUI") cases and had access to the case files created for each DUI case.

On September 5, 1995, Castleberry was charged in a five count indictment. Count one of the indictment charged Castleberry with conspiring to violate the Hobbs Act, 18 U.S.C. § 1951 (1994), with London.[1] According to the indictment, Castleberry obtained money from individuals who had DUI charges pending in the Atlanta Traffic Court and then paid part of this money to London, who, in return for the payment, illegally "fixed" or "disposed" of Castleberry's clients' DUI cases. Counts two through five of the indictment charged Castleberry, aided and abetted by London, with four substantive counts of extortion in relation to four specific individual clients. 18 U.S.C. §§ 1951, 2 (1994). On February 26, 1996, a jury convicted Castleberry on all counts. Castleberry timely appealed the judgment of conviction.

*I. Interstate Commerce*

The Hobbs Act prohibits extortion or robbery that "in any way or degree obstructs, delays, or affects commerce or the movements of any article or commodity in commerce." 18 U.S.C. § 1951(a)(1994); *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273-74, 4 L.Ed.2d 252 (1960)("There are two essential elements of a Hobbs Act crime: interference with commerce, and extortion."). Castleberry argues that in order to satisfy the interference with commerce element of the Hobbs Act the Government must show that the extortionate activity substantially affected interstate commerce. In support of this argument, Castleberry relies on *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

In *Lopez,* the Supreme Court considered whether Congress exceeded its congressional

---

[1]London died in April 1993.

authority under the Commerce Clause[2] in enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A)(1988). 514 U.S. at 551-52, 115 S.Ct. at 1626. This Act prohibited a person from possessing a gun while in a "school zone."

The Court listed three broad categories of activity which Congress could regulate pursuant to the Commerce Clause: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) activities which have "a substantial relation to interstate commerce ... *i.e.,* those activities that substantially affect interstate commerce." *Id.* at 559, 115 S.Ct. at 1629-30. After concluding that the Gun-Free School Zones Act only involved the third category, *Id.* at 559-60, 115 S.Ct. at 1630, the Court was uncertain whether an activity Congress intended to regulate must simply affect interstate commerce or substantially affect interstate commerce. *Id.* "The Court concluded that the proper test for a statute which "neither regulates a commercial activity nor contains a [jurisdictional] requirement that the [regulated activity] be connected in any way to interstate commerce' was whether the regulated activity "substantially affects' interstate commerce." *United States v. Atcheson,* 94 F.3d 1237, 1241 (9th Cir.1996)(quoting *Lopez,* 514 U.S. at 551-52, 559-60, 115 S.Ct. at 1626, 1630), *cert. denied,* --- U.S. ----, 117 S.Ct. 1096, 137 L.Ed.2d 229 (1997)[3]. Applying these principles to the Gun-Free School Zones Act, the Court concluded that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567, 115 S.Ct. at 1634. Accordingly, the Court held that the Act violated the

[2]The Commerce Clause provides: "The Congress shall have power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes...." *U.S. Const.* art. I, § 8.

[3]We note that the authoring Judge of the Ninth Circuit's *Atcheson* decision is none other than Judge Alarcon.

Commerce Clause. *Id.* at 551-52, 115 S.Ct. at 1626.

Prior to *Lopez,* this Court had held that the Government need only prove that extortionate activity has a minimal effect on interstate commerce to satisfy the Hobbs Act jurisdictional requirement. *United States v. Alexander,* 850 F.2d 1500, 1503 (11th Cir.1988); *United States v. Jackson,* 748 F.2d 1535, 1537 (11th Cir.1984). Castleberry contends the Supreme Court's decision in *Lopez* alters the jurisdictional nexus, requiring the Government to prove a substantial effect on interstate commerce, and not simply a minimal effect. We disagree.

Since *Lopez* was decided, this Court has not directly decided whether *Lopez* has changed "the measure of evidence necessary to support the interstate commerce element of a Hobbs Act prosecution." *See United States v. Frost,* 77 F.3d 1319, 1320 (11th Cir.1996), *judgment vacated on other grounds,* --- U.S. ----, 117 S.Ct. 1816, --- L.Ed.2d ---- (1997). However, this Court has rejected similar *Lopez* challenges in other contexts. *United States v. Jackson,* 111 F.3d 101 (11th Cir.1997)(Drug-Free School Zones Act did not exceed congressional authority under the Commerce Clause); *United States v. McAllister,* 77 F.3d 387 (11th Cir.)(finding constitutional a statute which makes possession of a firearm by a felon a criminal offense), *cert. denied,* --- U.S. ----, 117 S.Ct. 262, 136 L.Ed.2d 187 (1996); *Cheffer v. Reno,* 55 F.3d 1517 (11th Cir.1995)(holding that Freedom of Access to Clinic Entrances Act of 1994 was within Congress' Commerce Clause power).

In *McAllister,* the defendant, relying on *Lopez,* argued that Congress in enacting 18 U.S.C. § 922(g)(1), which makes it unlawful for a felon to "possess in or affecting commerce, any firearm or ammunition," exceeded its Commerce Clause power by regulating the mere possession of a gun. We rejected defendant's *Lopez'* argument mainly because the language of § 922(g)(1) contained a jurisdictional element ("possess in or affecting commerce, any firearm or ammunition,"), which the statute in *Lopez,* 18 U.S.C. § 922(q), did not contain. *McAllister,* 77 F.3d at 390.

Like the statute involved in the *McAllister* case, the Hobbs Act contains a jurisdictional element. *See* 18 U.S.C. § 1951(a) ("in any way or degree obstructs, delays, or affects commerce or the movements of any article or commodity in commerce"). It is this jurisdictional element of the Hobbs Act that defeats Castleberry's *Lopez* challenge. Unlike the statute involved in *Lopez,* the Hobbs Act contains a jurisdictional requirement that the extortion be connected in any way to interstate commerce. Because the Hobbs Act contains this jurisdictional element, we continue to hold that the Government only needs to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act.

We also note that while this Court has not specifically determined *Lopez* ' impact on the interstate commerce element of the Hobbs Act, other circuit courts have addressed that issue. All of the courts that have addressed the issue have held that, despite *Lopez,* the Government still needs to show only a minimal effect on interstate commerce to support a conviction under the Hobbs Act. *United States v. Atcheson,* 94 F.3d 1237, 1242 (9th Cir.1996)("Because the Hobbs Act is concerned solely with *inter* state, rather than *intra* state, activities, we conclude that *Lopez* 's " substantially affects' test is not applicable."), *cert. denied,* --- U.S. ----, 117 S.Ct. 1096, 137 L.Ed.2d 229 (1997); *United States v. Bolton,* 68 F.3d 396, 399 (10th Cir.1995)("We therefore conclude the Hobbs Act represents a permissible exercise of the authority granted to Congress under the Commerce Clause, and that under *Lopez,* all the government need show is a *de minimis* effect on interstate commerce in order to support a conviction under the Act."), *cert. denied,* --- U.S. ----, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Stillo,* 57 F.3d 553, 558 n. 2 (7th Cir.)("Nor did the *Lopez* decision undermine this Court's precedents that minimal potential effect on commerce is all that need be proven to support a conviction."), *cert. denied,* --- U.S. ----, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995); *see also United States v. Farmer,* 73 F.3d 836, 843 (8th Cir.)(after *Lopez* decision, robbery

of local convenience store satisfies effect on interstate commerce), *cert. denied,* --- U.S. ----, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996). The logic and reasoning expressed in our sister circuit courts' opinions is further persuasive support that *Lopez* did not change the measure of evidence needed to support the interstate commerce element of a Hobbs Act case.

*II. The Sufficiency of the Evidence*

Having concluded as a matter of law that the Hobbs Act only requires a minimal effect on interstate commerce to support a conviction, we next consider whether the Government's evidence was sufficient to establish such in this case. Castleberry challenges the denial of his motions for judgment of acquittal based on the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must consider the evidence in the light most favorable to the Government and draw all inferences and credibility choices in favor of the jury's verdict. *United States v. Adair,* 951 F.2d 316, 318 (11th Cir.1992). Castleberry's conviction will be affirmed if "any reasonable construction of the evidence allowed the jury to find appellant[ ] guilty beyond a reasonable doubt." *United States v. McKinley,* 995 F.2d 1020, 1025 (11th Cir.1993). Under this standard and based upon our review of the record, we hold there is sufficient evidence to support the jury's finding that Castleberry's extortionate activity had at least a minimal effect on interstate commerce.

In attempting to establish an interstate commerce element in this case, the Government presented the testimony of Thomas Enright, an official with the U.S. Department of Transportation. In general, Mr. Enright testified to the effect of non-prosecuted DUI cases on interstate commerce. According to Mr. Enright's testimony, if a person knows he or she can get away with drinking and driving, the more likely the person is to drink and drive. Mr. Enright went on to testify that the more often a person drinks and drives, the more likely a person is to have an accident. DUI accidents account for economic losses of over 46 billion dollars a year. Out of this amount, a percentage of

the medical, social security disability, and unemployment costs are funded by the Federal Government. In addition, Mr. Enright commented on the demoralizing effect that the failure to prosecute DUI cases has on police officers. Utilizing this testimony, the Government argues that the DUI ticket scheme engaged in by Castleberry and London had at least a minimal impact on interstate commerce.

The Government also presented evidence that fines paid in connection with DUI offenses went into the City of Atlanta's general fund. Out of the general fund, the City of Atlanta purchased goods from companies involved in interstate commerce. For example, Dr. William McLemore testified that because the State of Georgia had no oil refineries, all of the gasoline purchased with money from the City's general fund came from interstate commerce. Pursuant to state law, the City of Atlanta cannot run a deficit. Because London and Castleberry were fixing DUI cases, the City of Atlanta did not collect all the fines it was entitled to and consequently Castleberry's actions decreased the amount of revenue the City was able to spend in interstate commerce.

Castleberry contends the Government's interstate commerce evidence is "thin and speculative, concerning matters that "might' have occurred rather than matters that "actually' occurred." Castleberry cites *United States v. Frost,* 77 F.3d 1319 (11th Cir.1996), *judgment vacated on other grounds,* --- U.S. ----, 117 S.Ct. 1816, --- L.Ed.2d ---- (1997), as his best case to support his position that the Government's evidence is insufficient.

In *Frost,* we found that the Government's evidence failed to show that the resignation of a city council member from a six-member city council would affect interstate commerce. *Frost,* 77 F.3d at 1320. In accordance with this finding, we dismissed the defendants' Hobbs Act convictions. Castleberry's reliance on *Frost* is misplaced. In fact, we find *Frost* to be supportive of the conviction. Extending the analysis used in *Frost* to the facts of our case, we find that the

Government's evidence demonstrated that Castleberry and London's fixing DUI cases directly affected interstate commerce. We have already determined as a matter of law that the impact on commerce does not need to be substantial; all that is required is minimal impact. Resolving inferences from Mr. Enright's testimony in favor of supporting the verdict, we conclude that the jury could have found Castleberry guilty of the Hobbs Act interstate commerce element.

Our conclusion is reinforced by the opinion of the Fifth Circuit in *United States v. Wright,* 797 F.2d 245 (5th Cir.1986). The facts of *Wright* are extremely similar to ours. In *Wright,* two attorney defendants appealed their convictions under the Hobbs Act. The defendants had violated the Hobbs Act, "by conspiring to extort money from a law firm and its clients in exchange for not prosecuting drunken drivers...." *Wright,* 797 F.2d at 246.

On appeal, the defendants claimed that the government's evidence failed to establish that the extortion affected interstate commerce. *Wright,* 797 F.2d at 248. In a bench trial, the district court disagreed. Relying on testimony similar to Mr. Enright's, *see Wright* 797 F.2d at 249, the district court concluded that the government had proved the interstate commerce element of the Hobbs Act. Our sister circuit court found the evidence sufficient for the trial judge to find that the attorney defendants' extortion affected interstate commerce. We have no problem concluding that the jury's construction of the evidence in this case could likewise find Castleberry guilty of the Hobbs Act jurisdictional element.

*III. The Jury Instruction*

We next consider Castleberry's contention that the district court erroneously instructed the jury. In instructing the jury on the interstate commerce element of the Hobbs Act, the district court gave the following jury instruction:

> While it is not necessary that the Government prove that the defendant specifically intended to interfere with interstate commerce, it is necessary concerning this issue that the

Government prove that the natural consequences of the acts alleged in the indictment would delay, interrupt or adversely affect "interstate commerce." The phrase "interstate commerce" means the flow of commerce or business activities between two or more states. It also means commerce between places within the same state but passing through anyplace outside of that state. I instruct you that if you believe beyond a reasonable doubt that the defendant committed extortion as charged in the indictment, and you believe that the Government's evidence regarding the impact on interstate commerce beyond a reasonable doubt, then, as a matter of law, the jurisdictional requirements of the Hobbs Act relating to interstate commerce under Section 1951 of Title 18 of the United States Code have been met.

R11-1490. Castleberry claims this instruction was in error because the district court took the interstate commerce element away from the jury. *See United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)(holding that the Constitution "gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."). We disagree.

The district court has broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law. *United States v. Perez-Tosta,* 36 F.3d 1552, 1564 (11th Cir.1994). This Court will not reverse a conviction unless we find that issues of law were presented inaccurately or that the charge improperly guided the jury in such a substantial way as to violate due process. *Id.*

Contrary to Castleberry's assertion that the district court decided the interstate commerce nexus, the plain reading of the jury instruction leads us to conclude that the district court correctly instructed the jury that it was up to them to decide the issue. "I [the judge] instruct you [the jury] that if you [the jury] believe beyond a reasonable doubt that the defendant committed extortion as charged in the indictment and you [the jury] believe that the Government's evidence regarding the impact on interstate commerce beyond a reasonable doubt...." While the jury instruction may be a bit odd in incorporating the "as a matter of law" language, the district court did not misstate the interstate commerce issue "in such a substantial way as to violate due process."

Castleberry is correct that *Gaudin* requires a jury, and not a judge, to determine each element of the crime to which he is charged with.  However, Castleberry is simply wrong in arguing that the jury in his case did not decide each element of his Hobbs Act convictions.  It is clear to us that the jury decided the interstate commerce element.  The district court complied fully with the teachings of *Gaudin,* when it instructed the jury to decide whether the Government's evidence had established an impact on interstate commerce.

*IV. The Evidentiary Rulings*

Finally, Castleberry argues that the district court erred in three evidentiary rulings:  (1)the admission of entries from London's "DayTimers";  (2)admitting the testimony of three witnesses who paid London, but had no connection to Castleberry;  and (3)improperly limiting the cross-examination of a witness.  In reviewing a district court's evidentiary decisions, our standard of review is whether the district court abused its discretion.  *See United States v. Veltmann,* 6 F.3d 1483, 1491 (11th Cir.1993)("Evidentiary rulings challenged on appeal will not be overturned absent clear abuse of discretion").

The first alleged evidentiary error concerns the district court's admission of two entries from London's pocket calendar book called "DayTimers."  The two entries from London's DayTimers consisted of two lists of names and initials with a three or four digit number next to each name or set of initials.  The written entries were in London's handwriting.  One of the entries was dated June 30, 1987, and the other entry was on a page dated July 1, 1987 through September 30, 1987.  Included in the lists of names and initials are entries with the name Eddie and the initials E.S.C. Next to these names or initials are various numbers ranging from 150 to 1250.  There were other names and initials listed in the entries.  For example, the entries contained the names Rozen and Cochren with various numbers next to these two names.  During the trial, Roger Rozen and a James Cochran,

each testified that they paid London various amounts to fix DUI cases.

Both sides agree that the entries can only be admissible if they are considered nonhearsay, Fed.R.Evid. 801(d)(2)(E), or fall within an exception to the hearsay rule. Fed.R.Evid. 804(b)(3),(5). We conclude that the entries were admissible as nonhearsay under Fed.R.Evid. 801(d)(2)(E).

Fed.R.Evid. 801(d)(2)(E) provides that an admission by a party-opponent will not be considered hearsay if "[t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In order for the coconspirator statement to be admissible under this rule as nonhearsay, "there must have existed a conspiracy involving the declarant and the defendant, and the statement must have been made during the course and in furtherance of the conspiracy." *United States v. Turner,* 871 F.2d 1574, 1581 (11th Cir.1989). Castleberry does not strenuously contest that the entries are statements and that a conspiracy existed between himself and London. However, Rule 801(d)(2)(E) also requires that the statement be both "during the course" and "in furtherance of" the conspiracy. Castleberry claims that because the entries were neither made at the time of the conspiracy nor in furtherance of it, the district court erred in admitting them. The DayTimers' entries were located on pages containing dates in the year 1987 (June 30, 1987 and July 1, 1987 through September 30, 1987). Count one of the indictment states "[b]eginning on a date which is unknown to the Grand Jury, but which occurred on or before January 1, 1988, and continuing until on or about April 1, 1993,...." Based on these dates and relying on the "during the course" language in Rule 801(d)(2)(E), Castleberry contends the entries were preconspiracy. We disagree.

The dates of the entries are reasonably close to the dates of the conspiracy alleged in the indictment. The grand jury indictment clearly states "beginning on a date which is unknown to the Grand Jury, but which occurred on or **before** January 1, 1988...." R1-1 (emphasis added).

Moreover, both Rozen and Cochran testified that they paid London prior to the January 1, 1988 date alleged in the indictment. Rozen testified that he sent a check dated March 27, 1987, in the amount of $500.00 to London. The five hundred dollar check matches the amount next to Rozen's name on the DayTimer entry dated June 30, 1987. In addition, Rozen produced a check for $200.00 dated July 20, 1987, that matched the amount next to Rozen's name for the DayTimer entry dated July-September 1987. Rozen and Cochran's testimony corroborates the language and dates of the indictment and satisfies the "during the course" requirement of Fed.R.Evid. 801(d)(2)(E).

We next consider Castleberry's argument that the entries were not made "in furtherance of the conspiracy." Whether or not the entries are admissible as evidence is a preliminary question for the court to decide. Fed.R.Evid. 104(a). As we have previously stated:

> Before admitting a coconspirator's statement over an objection that the statement does not qualify under Rule 801(d)(2)(E), a district court must be satisfied that the party offering the testimony has proved by a preponderance of the evidence that ... the statement was made during the course and in furtherance of the conspiracy.

*United States v. Byrom,* 910 F.2d 725, 734 (11th Cir.1990)(citing *Bourjaily v. United States,* 483 U.S. 171, 175-76, 107 S.Ct. 2775, 2778-79, 97 L.Ed.2d 144 (1987)). The district court's factual finding that a statement is made in furtherance of a conspiracy pursuant to Rule 801(d)(2)(E) is reviewed under the clearly erroneous standard. *Byrom,* 910 F.2d at 734. The entries need not be necessary to the conspiracy; they must only further the conspiracy. *United States v. Caraza,* 843 F.2d 432, 436 (11th Cir.1988).

In our case, the district court found as a matter of fact that London's handwritten entries of monies Castleberry owed London were made in furtherance of the conspiracy. We do not believe the district court was clearly erroneous in making this factual finding. Indeed, Castleberry fails to offer any reason why this factual finding was erroneous. Accordingly, we do not believe the district court erred in admitting the two entries from London's DayTimers.

As to Castleberry's other two evidentiary challenges, we summarily dismiss them. We do not believe the district court abused its discretion in admitting the testimony of witnesses who paid London on behalf of clients other than those of Castleberry or individuals who paid London directly. Nor do we believe the district court abused its discretion in restricting Castleberry's cross-examination of Lisa Williams. *See* R2-51 (We find sufficient the district court's written order that explained its reasons for sustaining "the Government's objection to defendant's cross-examination of Williams and presentation of extrinsic evidence.").

*V. Conclusion*

For the reasons stated above, we affirm Castleberry's convictions.

AFFIRMED.