[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
1/14/99
THOMAS K. KAHN
CLERK

_____

No. 97-4576

_____

D. C. Docket No. 96-588-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL GUERRA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 14, 1999)

Before TJOFLAT, BARKETT and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Appellant Manuel Guerra seeks to overturn his conviction for the armed robbery of an Amoco gas station, arguing that some $300 taken during the course of the robbery was an insufficient evidentiary foundation to satisfy the jurisdictional requirement of the Hobbs Act, 18 U.S.C. § 1951 (1994). We have repeatedly held that the government needs to establish only a minimal effect on interstate commerce to support a violation of the Hobbs Act. That standard has been met here. Accordingly, we AFFIRM his conviction.

I.

The facts surrounding this robbery are straightforward. On April 16, 1996, at approximately 10:00 p.m., Guerra entered an Amoco service station in Hialeah, Florida, produced two hand grenades, pulled the pin from one of the grenades, and demanded all of the store's money from the store clerk, Jorge Rodriguez. Guerra pointed at one of the grenades and asked Rodriguez, "Do you know what this is?" Soon thereafter, Guerra stated, "I'm not playing, give me all of the money. I'll blow this place up, I don't care." Rodriguez gave Guerra approximately $300 in cash; Guerra put the hand grenades into his pocket and left the store. Rodriguez called the police. A short time later, he spotted Guerra in a bar across the street from the Amoco station. The police approached Guerra and, realizing that appellant held a grenade in his hand, grabbed the grenade from Guerra. A struggle ensued over control of the grenade and Guerra was arrested.

As to the interstate commerce connection, James Perez, the owner and manager of the service station, testified that his service station is an Amoco gas station, part of a nationwide chain/network of service stations, which sells gasoline and oil that originates in Texas and enters Florida through Port Everglades. In addition to gasoline, Perez testified that his station sells convenience store items such as cigarettes, beer, soda, gum, and chips. Specifically, the station sold Marlboro cigarettes from Richmond, Virginia, Budweiser beer from St. Louis, Missouri, Corona beer from Mexico, and Heineken beer from Germany. Perez further testified that the majority of his station's products come from outside of Florida.

Perez said that $300 was missing following the robbery, and that he was forced to close the store for more than two hours while the police investigated the incident. He also

2

testified that he lost business for several days following the robbery. Based on the direct loss of cash from the robbery, and the loss of customers during and after the police investigation, Perez estimated that the station lost between $1,000 and $1,500, and testified that because of the robbery, he had less money to purchase out-of-state goods.

On June 28, 1996, a federal grand jury sitting in the Southern District of Florida charged Guerra with obstructing, delaying, and affecting interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 1); with using and carrying a firearm, a Russian hand grenade, during and in connection with a crime of violence, the robbery, in violation of 18 U.S.C. § 924(c)(1) (Count II); with possession of unregistered firearms, two Russian hand grenades, in violation of 26 U.S.C. § 5861(d) (Count III); and, finally, with possession of a firearm without a serial number in violation of 26 U.S.C. § 5861(i) (Count IV). The jury found Guerra guilty of all counts, and thereafter the district judge sentenced him to a total of 401 months of imprisonment, 41 months on Counts I, III, IV and 360 months on Count II, to run consecutively to the other counts, followed by a three year term of supervised release, and a $200 special assessment.

Guerra filed a timely notice of appeal of his Hobbs Act robbery conviction, raising only the question of whether the robbery had a sufficient effect on interstate commerce to support the conviction. We review de novo a challenge to the sufficiency of the evidence, United States v. Keller, 916 F.2d 628, 632 (11th Cir. 1990), cert. denied, 499 U.S. 978, 111 S. Ct. 1628, 113 L. Ed. 2d 724 (1991), and we consider that evidence in the light most favorable to the government, drawing all inferences and credibility choices in favor of the jury's verdict, United States v. Adair, 951 F.2d 316, 318 (11th Cir. 1992).

3

II.

Appellant claims that the government failed to adduce sufficient evidence to show that the robbery affected interstate commerce and that, as a result, his Hobbs Act conviction must be reversed. The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). The Act broadly defines "commerce" as being "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." Id. § 1951(b)(3).

In Stirone v. United States, 361 U.S. 212, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960), the Supreme Court had occasion to describe the scope of the Hobbs Act: "[it] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference 'in any way or degree.'" Id. at 215, 80 S. Ct. at 272 (quoting 18 U.S.C. § 1951(a)); see also United States v. Culbert, 435 U.S. 371, 373, 98 S. Ct. 1112, 1113 55 L. Ed. 2d 349 (1978) (explaining that the words of the Hobbs Act "do not lend themselves to restrictive interpretation").

Consonant with the expansive language of the Hobbs Act prohibiting robbery or extortion that "in any way or degree, obstructs, delays, or affects commerce," 18 U.S.C. §

4

1951(a), we have long and consistently held that the jurisdictional requirement may be met simply by showing that the offense affected commerce to a "minimal degree." In United States v. Hyde, 448 F.2d 815 (5th Cir. 1971), cert. denied, 404 U.S. 1058, 92 S. Ct. 736, 30 L. Ed. 2d 745 (1972), the former Fifth Circuit rejected any requirement that the impact on commerce be substantial, holding that extortion or threats of violence under the Act "need affect interstate commerce only in a minimal degree to constitute a violation." Id. at 837; see also United States v. Alexander, 850 F.2d 1500, 1503 (11th Cir. 1988) (The government's jurisdictional burden under the Hobbs Act is "not great," the Act speaks in broad language manifesting a congressional purpose to use all of its constitutional commerce power, and therefore, "the government need only show a minimal effect on interstate commerce to sustain jurisdiction under the Hobbs Act."), cert. denied sub nom. Grider v. United States, 489 U.S. 1068, 109 S. Ct. 1346, 103 L. Ed. 2d 814 (1989); United States v. Jackson, 748 F.2d 1535, 1537 (11th Cir. 1984) (The effect on commerce "need only be minimal," and a minimal effect may be established under a "depletion of assets theory."); United States v. Nadaline, 471 F.2d 340, 343 (5th Cir.) ("The impact of extortion need affect interstate commerce only in a minimal degree."), cert. denied, 411 U.S. 951, 93 S. Ct. 1924, 36 L. Ed. 2d 414 (1973).

This long line of case precedent has not been altered by the Supreme Court's recent holding in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995), that Congress had exceeded its power under the Commerce Clause in enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) (1988). In United States v. Castleberry, 116 F.3d 1384, 1387 (11th Cir.), cert. denied, --- U.S. ---, 118 S. Ct. 341, 139

L. Ed. 2d 265 (1997), the Eleventh Circuit considered whether <u>Lopez</u> had any effect on the "'the measure of evidence necessary to support the interstate commerce element of a Hobbs Act prosecution.'" <u>Id.</u> at 1386 (quoting <u>United States v. Frost</u>, 77 F.3d 1319, 1320 (11th Cir.1996), <u>judgment vacated on other grounds</u>, --- U.S. ---, 117 S. Ct. 1816, 137 L. Ed. 2d 1025 (1997)).  We held that it did not, and we distinguished <u>Lopez</u>, observing that the Hobbs Act contains an explicit jurisdictional element, <u>see</u> 18 U.S.C. § 1951(a), while the Gun-Free School Zones Act did not.  <u>Castleberry</u>, 116 F.3d at 1387.  This Court expressly continued to hold that "the Government only needs to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act." <u>Id.</u>

Since <u>Lopez</u>, our sister circuits have uniformly held that the government still need establish only a minimal effect on interstate commerce to support a conviction under the Act. <u>See</u> <u>United States v. Farrish</u>, 122 F.3d 146, 148 (2d Cir. 1997), <u>cert. denied</u>, --- U.S. ---, 118 S. Ct. 1056,  140 L. Ed. 2d 118 (1998); <u>United States v. Robinson</u>, 119 F.3d 1205, 1208 (5th Cir. 1997), <u>cert</u>. <u>denied</u>, --- U.S. ---, 118 S. Ct. 1104, 140 L. Ed. 2d 158 (1998); <u>United States v. Harrington</u>, 108 F.3d 1460, 1465 (D.C. Cir. 1997); <u>United States v. Atcheson</u>, 94 F.3d 1237, 1242 (9th Cir.1996), <u>cert. denied</u>, --- U.S. ---, 117 S. Ct. 1096, 137 L. Ed. 2d (1997); <u>United States v. Farmer</u>, 73 F.3d 836, 843 (8th Cir.), <u>cert. denied</u>,  518 U.S. 1028, 116 S.Ct. 2570, 135 L. Ed. 2d 1086 (1996); <u>United States v. Bolton</u>, 68 F.3d 396, 399 (10th Cir.1995), <u>cert. denied</u>, 516 U.S. 1137, 116 S. Ct. 966, 133 L. Ed. 2d 887 (1996); <u>United States v. Stillo</u>, 57 F.3d 553, 558 n. 2 (7th Cir.), <u>cert. denied</u>, 516 U.S. 1137, 116 S. Ct. 966, 133 L. Ed. 2d 887 (1995).

Most recently, in United States v. Paredes, 139 F.3d 840 (11th Cir. 1998), cert. denied, --- U.S. ---, --- S. Ct. ---, --- L. Ed. 2d --- (1998), we applied the "minimal effect" jurisdictional requirement to a Hobbs Act robbery case. In Paredes, the defendants robbed two local convenience stores of one case of beer, a carton of cigarettes, and less than $170 in cash. Although the convenience stores were not connected with any out-of-state store chain, they both sold products which had been manufactured or produced outside the state. Consequently, we concluded that the Hobbs Act's jurisdictional requirement was satisfied, because the government demonstrated that the robberies had at least a "'minimal effect on interstate commerce to support a conviction.'" Id. at 844-45 (quoting Castleberry, 116 F.3d at 1387). We reiterated in Paredes that an individual defendant's conduct need not substantially affect commerce precisely because the Hobbs Act regulates general conduct -- robberies and extortion -- which in the aggregate affects commerce substantially. See id. at 843; see also Robinson, 119 F.3d at 1215; Bolton, 68 F.3d at 699. We, observe, again, that the Hobbs Act contains an express jurisdictional element that ensures that the individual robbery charged affects interstate commerce. The reach of the Act is thereby limited to a discrete group of robberies that have an effect on interstate commerce.

Applying this long line of cases to the instant matter, there can be little doubt that Guerra's conduct is properly subject to the Hobbs Act. He robbed an Amoco service station that was part of a nationwide network of gas stations and primarily sold fuel products drawn from outside the state. Guerra took some $300 in cash from the service station. Indeed, the amount stolen in this case is more than the aggregate of $170 taken from two local stores in Paredes, which we found sufficient to meet the jurisdictional requirement. The service

station here lost more than just the money the store clerk handed over to Guerra; it was forced to close for more than two hours while police investigated the robbery, and it lost business over the next several days.  This is a classic "depletion of assets" scenario.  <u>See</u> <u>United States v. Jackson</u>, 748 F.2d at 1537.  Under our jurisprudence, this is sufficient to satisfy the Hobbs Act's "minimal effect" jurisdictional requirement.

Accordingly, we reject Guerra's challenge to the sufficiency of the evidence and AFFIRM the judgment of the district court.

AFFIRMED.