[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15589
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00370-CR-01-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 12, 2011)

Before CARNES, ANDERSON and FARRIS,* Circuit Judges.

_____

*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

We review convictions under the Hobbs Act de novo. *See, e.g., United States v. Gray*, 260 F.3d 1267, 1271 (11th Cir. 2001). We consider evidence in the light most favorable to the government, drawing all inferences and credibility choices in favor of the jury's verdict. *See United States v. Guerra*, 164 F.3d 1358, 1359 (11th Cir. 1999).

Smith argues (1) that there is insufficient evidence to establish the interstate commerce jurisdictional element of the Hobbs Act robbery of a convenience store, (2) the district court erred by admitting prior bad acts evidence, and (3) that he was denied his right to proper advisement of his right to testify.

The Hobbs Act defines "commerce" broadly. It does not "lend itself to a restrictive interpretation." *United States v. Culbert*, 435 U.S. 371, 373 (1978). The record reflects that on the date of the robbery (1) the shop sold goods purchased from out of state and (2) all Citgo gas was transported from out of state. Nothing more was required.

A pre-trial hearing established that the government intended to offer prior bad acts evidence. Smith was convicted after a three day trial in which one of the participants testified as a cooperating witness.

The photographs about which Smith complains were from surveillance footage taken in a robbery committed five days before the robbery in question. Testimony indicated that Smith and one co-defendant were depicted in a composite photograph from that robbery.

In determining whether the trial court erred in admitting evidence of prior bad acts under Fed. R. Evid. 404(b) we consider identification, relevance other than defendant's character, and whether its probative value is outweighed by its undue prejudice. Here the evidence met all requirements of the rule. *See United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)(en banc).

Evidence of prior bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 404(b) "is a rule of inclusion ... [and] 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

There was no error. The court applied the 404(b) balancing test, gave an appropriate limiting instruction and properly concluded that the probative value outweighed its prejudice.

The record reflects that Smith understood his right to testify, had been counseled about it by his attorney and that his waiver of the right was knowing and voluntary. The most plausible reading of the challenged colloquy with the judge reveals that Smith had already made up his mind not to testify before the allegedly incorrect advice from the judge. Thus, Smith's waiver of his right to testify was knowing and voluntary without regard to the judge's later advice. Further, much of the evidence was beyond dispute. Police were on the scene before two robbers exited the Otter Shop/Citgo gas station. The two exchanged fire with the police and were arrested after they sought to evade detection by running into a wooded area.

However, even assuming that Smith had not already made up his mind not to testify, and even assuming that the judge's advice might have been erroneous, we address Smith's claim of reversible error. Smith contends that he was deprived of his right to testify because the district court erroneously informed him that by taking the stand he would subject himself to cross-examination concerning his entire criminal history. Because Smith did not object to the district court's comments at trial concerning his decision to testify, we review his claim only for plain error. United States v. Vonn, 535 U.S. 55, 59, 63, 122 S.Ct. 1043, 1046,

4

1048 (2002); see also United States v. Olano, 507 U.S. 725, 731–37, 113 S.Ct. 1770 (1993).

For Smith's claim to warrant correction under plain error review, there must be "(1) an error, (2) that is plain, (3) that affects substantial rights (which usually means that the error was prejudicial), and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Mangaroo, 504 F.3d 1350, 1353 (11th Cir. 2007) (citations omitted). Smith argues that he need not satisfy the last two prongs of plain error review, however, because the district court's error was structural and therefore requires automatic reversal. He is wrong about that.

On the first day of trial, the following exchange took place between the district court, Smith, and his attorney:

The Court: Thank you. Mr. Smith, I think I talked to you about this at your pretrial. Of course you have the right to testify if you want to. You also have the Constitutional right not to testify. If you do not testify I'll instruct the jury they cannot even talk about that in deliberations. On the other hand, if you do testify, Mr. Alley will be able to cross-examine you about any criminal history you have or what that might be or whether you have a criminal history. But you would be subject to a very thorough cross-examination about where you had been and what you had been doing that day before they arrested you there. So I just wanted to be sure you understood all that.

5

> Maybe there's something else I should point out to him that I haven't. I don't know.

Mr. Jones: I've addressed the issue with him a couple of times, Judge.

The Court: You don't have to tell me right now, but at some point I'm going to ask you whether you want to testify or not. Do you know now or you want to keep thinking about it?

Mr. Smith: No, your Honor. I don't wish to.

The Court: Testify?

Mr. Smith: Correct.

The Court: Okay. And you had talked to your lawyer about that, I assume, and make [sic] a decision?

Mr. Smith: Right.

On the third day of trial, at the close of the government's evidence, the following exchange took place between the Assistant U.S. Attorney, the district court, and Smith:

Mr. Alley [AUSA]: Just so the Court can confirm the Defendant's not going to testify, you did that earlier today as well as earlier in the case, I believe.

The Court: I did it earlier in the case. We've had the discussion over and over again, Mr. Smith, but you know you have the right to testify?

Mr. Smith: Yes, Ma'am.

The Court: Okay. And you've chosen not to?

Mr. Smith:        Yes, Ma'am.

The Court:        Okay.

Although in the first exchange we quoted the district court told Smith that if he testified he could be cross-examined "about any criminal history [he had] or what that might be or whether [he had] a criminal history," in reality only one of Smith's prior convictions would have been admissible for impeachment purposes under Federal Rule of Evidence 609. Smith contends that the bad advice the district court gave him deprived him of his right to testify and amounted to a structural error.

A structural error is one that so fundamentally affects the structure of judicial proceedings that it requires automatic reversal. In <u>Johnson v. United States</u>, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 1549–50 (1997), the Supreme Court noted that it has "found structural errors only in a very limited class of cases." <u>Id.</u> (citing <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S.Ct. 792 (1963) (a total deprivation of the right to counsel); <u>Tumey v. Ohio</u>, 273 U.S. 510, 47 S.Ct. 437 (1927) (lack of an impartial trial judge); <u>Vasquez v. Hillery</u>, 474 U.S. 254, 106 S.Ct. 617 (1986) (unlawful exclusion of grand jurors of defendant's race); <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 104 S.Ct. 944 (1984) (the right to self-representation at trial); <u>Waller v. Georgia</u>, 467 U.S. 39, 104 S.Ct. 2210 (1984) (the

7

right to a public trial); <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S.Ct. 2078 (1993) (erroneous reasonable-doubt instruction to jury)).

Although neither Smith nor this Court has been able to identify any case holding that the abridgement or denial of the right to testify constitutes a structural error, Smith analogizes the situation to the denial of the right to self-representation, which has been found to be a structural error. <u>See</u> <u>McKaskle</u>, 465 U.S. at 177 n.8. He argues that, like the complete denial of the right to self-representation, a deprivation of his right to testify should be considered a structural error in the trial because it is not amenable to analysis under the prejudice and fundamental fairness prongs of the plain error standard. As Smith acknowledges, however, the Supreme Court has expressly reserved the question of whether a structural error alleviates a defendant's burden to show prejudice under plain error review. <u>See</u> <u>United States v. Marcus</u>, --- U.S. ---, 130 S.Ct. 2159, 2164–65 (2010) ("[W]e have noted the possibility that certain errors, termed 'structural errors,' might 'affect substantial rights' regardless of their actual impact on an appellant's trial."); <u>Puckett v. United States</u>, --- U.S. ---, 129 S. Ct. 1423, 1432 (2009) (reserving the issue of whether structural errors automatically satisfy the third "plain error" criterion); <u>United States v. Cotton</u>, 535 U.S. 625, 632, 122 S.Ct. 1781 (2002) (same); <u>Johnson</u>, 520 U.S. at 469, 117 S.Ct. at 1550 (same).

Assuming that the district court did err by advising Smith as it did, and further assuming that the error was plain, see United States v. Teague, 953 F.2d 1525, 1533 n.8 (11th Cir. 1992) (en banc), and even further assuming that a structural error would require automatic reversal even under plain error review, the assumed error of the district court in this case did not constitute a structural defect in the proceedings.

As the Supreme Court has explained, structural errors "defy analysis by 'harmless-error' standards because they affect the framework within which the trial proceeds," and a structural error is not "simply an error in the trial process itself." Gonzalez-Lopez, 548 U.S. at 149, 126 S. Ct. at 2564 (quotation marks and alteration omitted). In discussing the difference between trial errors and structural defects in Gonzalez-Lopez, the Court explained the criteria it has used to determine whether an error should be considered structural:

> [A]s we have done in the past, we rest our conclusion of structural error upon the difficulty of assessing the effect of the error. The dissent would use "fundamental unfairness" as the sole criterion of structural error, and cites a case in which that was the determining factor, see Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827 (1999) [holding that a district court's instruction omitting an element of an offense was not a structural error because it did not render the trial fundamentally unfair] . . . [W]e have also relied on the irrelevance of harmlessness.

9

Gonzalez-Lopez, 548 U.S. at 149 n.4, 126 S.Ct. 2564 n.4 (some citations omitted). Under that explanation, when we determine whether the denial or abridgement of the right to testify is a trial error or a structural defect, we should focus on how difficult it is to assess the effect of the error on the outcome.

With that focus in mind, the error that Smith contends was made is not a structural one. It is not impossible, or all that difficult, to assess the effect of the claimed error on the outcome of the trial. A defendant who was persuaded not to testify, or prevented from testifying, can establish the harm he suffered by proffering the testimony that he would have given. As the Third Circuit has explained, "it is precisely the fact that the contours of the defendant's probable testimony . . . can be assessed in the context of the evidence as a whole that distinguishes the right-to-testify issue from structural defects, the effects of which are inherently elusive, intangible, and not susceptible to harmless error review." Palmer v. Hendricks, 592 F.3d 386, 399 (3d Cir. 2010).

Smith has never made any attempt to proffer what his testimony would have been, but that does not change the fact that he could have done so. Because he has made no proffer, Smith has not met his burden under the third prong of plain error review to demonstrate that the claimed error affected his substantial rights, which "almost always requires that the error must have affected the outcome of the

10

district court proceedings." United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005). We need not reach the fourth prong of plain error review.

There are a few cases in which the Supreme Court has found structural error based on the need to prevent behavior for reasons that have little or nothing to do with any impact the error may have had on the outcome of the trial. Vasquez v. Hillery, which involved the unlawful exclusion of grand jurors based on race, is one example, and Waller v. Georgia, which involved the denial of the right to a public trial, is another. See Vasquez, 474 U.S. at 263–64, 106 S.Ct. at 623; Waller, 467 U.S. at 49–50, 104 S.Ct. at 2217. Misinformation about permissible cross-examination if a defendant testifies simply is not that kind of error.

AFFIRMED.