[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13726
Oral Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00098-CR-ORL-22-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LINSY DI PIETRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 27, 2010)

Before DUBINA, Chief Judge, PRYOR and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Linsy Di Pietro owned and operated A-3 Services, Inc., which arranged

marriages in Florida between illegal aliens and United States citizens solely for the purpose of helping those aliens obtain permanent legal status. After a bench trial, Ms. Di Pietro was convicted of aiding and abetting four individuals in their violations of 8 U.S.C. § 1325(c), which imposes criminal liability on any individual who knowingly enters into a marriage for the purpose of evading federal immigration laws.

This case requires us to address *de novo* two constitutional challenges to § 1325(c) in evaluating whether the district court properly denied Ms. Di Pietro's motion to dismiss her indictment.[1] Specifically, Ms. Di Pietro argues that § 1325(c) is so vague that it violates the Due Process Clause of the Fifth Amendment. She also contends that the statute unconstitutionally preempts Florida's marriage laws, which purportedly recognize the validity of marriages entered into for any purpose. After thorough review and oral argument, we agree with the district court that Ms. Di Pietro's constitutional challenges do not pass muster. We therefore affirm the district court's ruling and sustain her conviction under the statute.

---

[1]Generally, we review a district court's denial of a motion to dismiss the indictment for abuse of discretion. United States v. Palomino Garcia, 606 F.3d 1317, 1322 (11th Cir. 2010). But when that motion "challenges the constitutionality of a statute, we review *de novo* the interpretation of the statute by the district court." United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009).

I.

To satisfy due process concerns, Congress must ensure that a criminal law not only "provide[s] the kind of notice that will enable ordinary people to understand what conduct it prohibits" but also that it does not authorize or "even encourage arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56, 119 S. Ct. 1849, 1859 (1999) (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983)). A criminal defendant who finds herself within the indeterminate scope of a law that falls below these standards may seek to challenge that law as unconstitutionally vague, either on its face or as applied to her own individual facts and circumstances.

Ms. Di Pietro challenges § 1325(c) as being void for vagueness. The statute provides that "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be [subject to imprisonment, a fine, or both]." 8 U.S.C. § 1325(c). Ms. Di Pietro concedes that § 1325(c) clearly proscribes the conduct in which she engaged and thus the statute is not unconstitutional as applied to her. She only challenges the law on its face, attacking the very validity of the statute itself.

In making this challenge, Ms. Di Pietro urges us to evaluate her claim using a more stringent vagueness standard than usual because she says that § 1325(c)

3

implicates the right to marry, a form of association she says is protected by the First Amendment.  Although the Supreme Court has indeed applied a more exacting vagueness review when constitutional rights are implicated,[2] this case does not require us to grapple with the alleged impact of § 1325(c) on the First Amendment or to determine the contours of a heightened vagueness standard applicable to criminal statutes implicating First Amendment liberties.  Rather, Ms. Di Pietro's challenge may be resolved by a straightforward application of a well-established rule of constitutional law.

That rule provides that a party "to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."  United States v. Raines, 362 U.S. 17, 22, 80 S. Ct. 519, 523 (1960).  The rule developed from the recognition that constitutional rights are personal in nature; that prudential concerns counsel for

---

[2]To bring a facial vagueness challenge, the Supreme Court has required that the party establish that "no set of circumstances exists under which the [criminal statute] would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987).  But when the statute infringes on constitutionally protected rights, such as the right to free speech or of association, the Supreme Court has said that a more stringent vagueness standard should apply.  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S. Ct. 1186, 1193–94 (1982).  In Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1330 (11th Cir. 2001), we noted that the Supreme Court in City of Chicago v. Morales, 527 U.S. 41, 119 S. Ct. 1849 (1999), applied such a standard when it upheld a facial vagueness challenge to a law that (1) had no mens rea requirement; (2) infringed on constitutionally protected rights; and (3) had text permeated by vagueness.

limiting the scope of constitutional adjudications; and that Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  New York v. Ferber, 458 U.S. 747, 767–68 & n.20, 102 S. Ct. 3348, 3360 & n.20 (1982).  The rule thus protects not only against "unnecessary pronouncement on constitutional issues" but also against "premature interpretations of statutes in areas where their constitutional application might be cloudy."  Raines, 362 U.S. at 21, 80 S. Ct. at 522.  It also precludes a party from litigating the personal constitutional rights of others and avoids an undesirable foray by federal courts into "'every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.'"  Id. (quoting Barrows v. Jackson, 346 U.S. 249, 256, 73 S. Ct. 1031, 1035 (1953)).  Furthermore, it ensures that federal courts make informed judgments by limiting their decisions to actual, not hypothetical, cases that carry with them facts and data on which a well reasoned decision may be based.  See Ferber, 458 U.S. at 768, 102 S. Ct. at 3360; see also Raines, 362 U.S. at 22, 80 S. Ct. at 523.

In articulating this general rule in the context of void-for-vagueness challenges under the Due Process Clause, the Supreme Court has stated that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  Vill. of Hoffman

5

Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982).  Recently, the Court clarified that the rule makes no exception for vagueness challenges that implicate the First Amendment.  See Holder v. Humanitarian Law Project, __ U.S. __, 130 S. Ct. 2705, 2718–19 (2010).  This clarification addressed a tendency of courts to analyze such vagueness challenges together with First Amendment overbreadth challenges,[3] which are exempted from the rule.  Unlike void-for-vagueness challenges, overbreadth challenges fall into one of the few exceptions to the rule that confines an individual to addressing her own harm, and its exemption is justified by a "weighty countervailing polic[y]": that is, "'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.'"  Ferber, 458 U.S. at 768, 102 S. Ct. at 3360–61 (quoting Gooding v. Wilson, 405 U.S. 518, 521, 92 S. Ct. 1103, 1105 (1972)).  For this reason, a party to whom the law may be constitutionally applied may assert an overbreadth challenge to a law on the ground that it violates the First Amendment rights of others.  See, e.g., Humanitarian Law Project, __ U.S. at __, 130 S. Ct. at 2719; United States v. Stevens, __ U.S. __, 130 S. Ct. 1577, 1593

---

[3]The two tend to be analyzed together because a law's vagueness is relevant to an overbreadth analysis in determining whether the law chills a substantial amount of protected expression.  See Hoffman Estates, 455 U.S. at 494 n.6, 102 S. Ct. at 1191 n.6.

(2010) (Alito, J, dissenting); United States v. Williams, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845 (2008); Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 482–83, 109 S. Ct. 3028, 3036 (1989); Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 462 n.20, 98 S. Ct. 1912, 1922 n.20 (1978). Such departures from the rule are rare, however, and accordingly overbreadth challenges have been described as "strong medicine" that should be used as a "last resort" and only then when the statute implicates a "substantial" amount of protected expression. Ferber, 458 U.S. at 769, 102 S. Ct. 3361 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613, 615, 93 S. Ct. 2908, 2916–17 (1973)).

Ms. Di Pietro's challenge to § 1325(c) falls squarely within the rule prohibiting a facial vagueness challenge by one to whom a statute may be constitutionally applied. See Humanitarian Law Project, __ U.S. at __, 130 S. Ct. at 2718–19. In bringing the appeal, Ms. Di Pietro sought to have us declare § 1325(c) unconstitutionally vague for either (or both) of two independent grounds: first, she claims the statute fails to provide adequate notice of what conduct it prohibits, and second, that it is susceptible to arbitrary and discriminatory enforcement. See Morales, 527 U.S. at 56, 119 S. Ct. at 1859. At oral argument, Ms. Di Pietro conceded—and we agree—that she is barred from bringing a facial challenge based on lack of notice. As for her arbitrary and

discriminatory enforcement challenge, Ms. Di Pietro has not pointed us to any "weighty countervailing policies"—such as the one associated with the overbreadth doctrine—that would caution us against applying the rule, as we did in Joel v. City of Orlando, 232 F.3d 1353, 1359–60 (11th Cir. 2000), to those types of vagueness challenges. We therefore hold that because Ms. Di Pietro does not dispute that § 1325(c) clearly covers her own conduct, she may not challenge the statute on vagueness grounds based on its application to others.

## II.

Ms. Di Pietro also seeks to invalidate § 1325(c) on the ground that it unconstitutionally preempts Florida's marriage laws. By criminalizing marriages entered into for the purpose of evading federal immigration laws, Ms. Di Pietro claims that § 1325(c) conflicts with Florida's marriage laws, which presumably permit those marriages as marriages of convenience. See generally Chaachou v. Chaachou, 73 So. 2d 830, 838 (Fla. 1954). According to Ms. Di Pietro, the conflict should be resolved in favor of Florida because the regulation of marriage traditionally falls within the province of the states, not the federal government, and because Congress can exercise its plenary authority over immigration matters in less restrictive ways than by criminalizing valid state marriages.

Ms. Di Pietro's preemption argument is a novel one. In making it, she says

8

that "[s]tate family . . . law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." Hisquierdo v. Hisquierdo, 439 U.S. 572, 582, 99 S. Ct. 802, 808 (1979) (quoting United States v. Yazell, 382 U.S. 341, 352, 86 S. Ct. 500, 507 (1966)). But the problem with Ms. Di Pietro's argument is that she does not ask us to override state law. Rather, she turns the Supremacy Clause on its head, urging that we enjoin the application of § 1325(c) in deference to Florida's marriage laws. The Supremacy Clause, however, does not apply in this way. See U.S. Const. art. VI ("[T]he Laws of the United States . . . shall be the supreme Law of the Land . . . ."). To the extent that any conflict exists between § 1325(c) and Florida's marriage laws,[4] it could only serve to invalidate the latter. This, of course, does Ms. Di Pietro no good, where her conviction arises under federal, not state, law.

For these reasons, the district court did not abuse its discretion in denying Ms. Di Pietro's motion to dismiss the indictment.

AFFIRMED.

---

[4]Even assuming that state law could trump federal law, we do not see a conflict between § 1325(c) and Florida's marriage laws. Although marriage is an element of the crime under § 1325(c), the statute does not invalidate or criminalize that marriage. Rather, the law only criminalizes the *purpose* for which that marriage will be used and therefore stands in no different position than other criminal laws that involve the use of legal means for illicit purposes. See Lutwak v. United States, 344 U.S. 604, 610–613, 73 S. Ct. 481, 485–87 (1953).