[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15525
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:08-cr-00368-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID MARSHALL DEAL,
a.k.a. cptliquidice999999,
a.k.a. md,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 18, 2011)

Before EDMONDSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

David Deal appeals his convictions for attempting to entice a minor both to engage in sexual activity, 18 U.S.C. § 2422(b), and to engage in sexually explicit conduct to produce child pornography, id. § 2251(a), (e). Deal challenges the denial of his motion to dismiss his indictment, the sufficiency of the evidence to support his convictions, and evidentiary rulings. Deal also argues that the United States elicited false testimony from an investigating officer and that the district court should have instructed the jury about Deal's potential sentence. We affirm.

On August 28, 2008, Deal sent an instant message using a screen name "cptlinquidice999999" to "Alice," an online persona created by Detective Kurt Jones, who served on a task force that investigated internet crimes against children. Jones used grammar typical of a 13 year old girl whose profile he had created both on Yahoo! and VampireFreaks.com to discuss with Deal topics ranging from Alice's age and sexual experience to the appearance of her genitalia. During nine days of the instant message conversations, most of which Deal initiated, Deal provided Alice with his cellular telephone number and several photographs of himself, including one that depicted a registration number on a boat that Jones traced to Deal. During an online conversation on September 6, 2008, Alice agreed to meet Deal in the parking lot of Dave and Buster's restaurant. After Jones observed Deal arrive at the restaurant at the arranged time, Jones sent

Deal an instant message stating that Alice got caught trying to sneak out of her house. In the five days of online conversations that followed, Deal became more graphic in describing how he wanted to photograph Alice and how he wanted to engage in specific sexual activities with Alice. Deal inquired about Alice's waist size, offered to bring her a pair of thong underwear, and said repeatedly that he would wear a condom during sexual intercourse.

Alice agreed to meet Deal at Dave and Buster's restaurant on September 11, 2008, and an investigator arrested Deal in an adjacent parking lot after he drove through the parking lot of the restaurant. Investigators searched Deal's vehicle and discovered in an open backpack a camera, two pairs of thong underwear, and condoms. Deal later waived his rights to remain silent and to counsel and, when confronted with evidence of his online conversations, admitted that he had intended to meet Alice, but asserted he did not intend to harm Alice. Deal apologized repeatedly, and he wrote in a letter to the prosecutor that he was "deeply sorry," he "did not want to do anything to this girl," and he would "never do anything like this again and hate to have this on [his] record."

Deal was charged in a third superceding indictment with two counts of transporting videos of child pornography, 18 U.S.C. § 2252(a)(1), attempting to entice a minor to engage in sexual activity, id. § 2422(b), and attempting to entice

3

a minor to engage in sexually explicit conduct to produce child pornography, id. § 2251(a), (e). Before trial, the United States dismissed the two distribution charges. Deal filed motions to suppress the evidence discovered in his vehicle, his statements to law enforcement, and the letter he wrote to a prosecutor, and he also moved to dismiss as unconstitutional his charge for violating section 2422(b). The district court denied Deal's motions. At trial, the jury found Deal guilty of both charges of attempted enticement.

Deal argues that his charge for violating section 2422(b) should have been dismissed on the ground that the statute is unconstitutionally vague and overbroad, but this argument fails. Deal acknowledges that we rejected a similar argument in United States v. Panfil, 338 F.3d 1299, 1301 (11th Cir. 2003), where we held that "the language of § 2422(b) is clear" and the phrase "sexual activity for which any person can be charged with a criminal offense" could be interpreted readily based on its "plain and ordinary meaning[]." Deal contends that the statute is vague because it incorporates the laws of the 50 states, which vary with regard to what qualifies as a prohibited "sexual activity," but the statute is not unconstitutional because it references different state laws, see United States v. Anwan, 966 F.2d 1415, 1424 (11th Cir. 1992). Deal's indictment, which included the text of the statute, charged him with attempting to entice "a person [he] believed had not

4

attained the age of 18 years, to engage in sexual activity for which a person can be charged . . . under the laws of the State of Florida, that is, the crime of lewd and lascivious battery upon a person less than 16 years of age, in violation of Section 800.04(4)(a), Florida Statutes." 18 U.S.C. § 2422(b). Deal lacks standing to argue hypothetically that the statute would be unconstitutional as applied either to conduct that would constitute a misdemeanor or would involve a 16 or 17 year old. See United States v. Di Pietro, 615 F.3d 1369, 1371–72 (11th Cir. 2010). The district court did not err by denying Deal's motion to dismiss his indictment.

Deal argues that the United States failed to prove that he believed that Alice was 13 years old or that Deal took a "substantial step" to accomplish his crimes, but his arguments are absurd. Deal was well aware of Alice's age: Deal contacted Alice after reviewing her online profiles at Yahoo! and VampireFreaks.com, both of which contained pictures of a young girl and described Alice as being 13 years old; Alice told Deal repeatedly that she was 13 and in eighth grade; Deal responded positively to Alice's question if "13 [was] ok"; and Deal remarked that he "fe[lt] like [he]'d be robing [sic] the cradle . . . ." Although Deal testified that he believed Alice was older because her online photograph was dated and she frequented an adult restaurant, Dave and Buster's, a jury reasonably could have discredited Deal's testimony, see United States v. Tampas, 493 F.3d 1291, 1298

5

(11th Cir. 2007), based on Alice's statements, Deal's keen interest in Alice's physical immaturity, see United States v. Lanzon, 639 F.3d 1293, 1298–99 (11th Cir. 2011), and his acknowledgment in the first online conversation that a relationship with Alice could "get [him] in . . . trouble," see United States v. Farley, 607 F.3d 1294, 1334 (11th Cir. 2010). Deal's testimony, which the jury discredited, provides substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 2007). In addition to his sexually explicit conversations, Deal took other substantial steps to entice Alice to agree to sexual activities and to be photographed. Deal offered to buy Alice a bikini and thong underwear, obtained her permission to be photographed, arranged to meet at a location convenient for Alice, traveled to that location twice, and had in his possession a camera, thong underwear, and condoms. See Lanzon, 639 F.3d at 1299. The United States presented ample evidence to support Deal's convictions.

Deal challenges the denial of three of his motions to suppress, but his arguments fail. First, Deal argues that the evidence seized from his vehicle should have been suppressed because officers lacked probable cause to search his vehicle without a warrant, but the officers had probable cause to believe that Deal had contraband in his vehicle: that is, the camera, thong underwear, and condoms Deal had mentioned in his online conversations with Alice. See id. at 1300. Second,

Deal argues that the oral and written statements he made to law enforcement were involuntary because he felt ill and because Jones "tricke[d]" Deal into believing that he could avoid prosecution, but Deal waived his right to remain silent both orally and in writing and the events that followed did not affect the voluntariness of that waiver. When Deal complained of feeling lightheaded and queasy, interrogators granted his request for a trash can and provided him water. Jones's remark to Deal that "we might be able to straighten some of this out" was responsive to Deal's assertions that his contact with Alice was innocent and did not promise exoneration in exchange for Deal's cooperation, see United States v. Mercer, 541 F.3d 1070, 1075–76 (11th Cir. 2008), and Jones's statement in which he offered Deal an "opportunity" to write a letter to the prosecutor was "not a sufficient inducement so as to render [the contents of the letter] involuntary," United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985). Third, Deal argues that the letter he wrote to a prosecutor was inadmissible as part of a plea negotiation, see Fed. R. Evid. 410; Fed. R. Crim. P. 11(f), but Deal's statements of contrition, coupled with the denial of guilt, were plainly not made "with a view toward negotiating a plea agreement." United States v. Robertson, 582 F.2d 1356, 1368 (5th Cir. 1978).

Deal argues that the district court plainly erred by admitting "suppressed evidence" about Deal's Yahoo! internet account, but when the United States offered into evidence the records of the online account, defense counsel stated he had "[n]o objection." Moreover, Deal admitted that he had engaged in the conversations for that account. The district court did not plainly err.

Deal also complains about two other trial errors, neither of which warrants relief. First, Deal argues, for the first time on appeal, that Jones testified falsely that Deal contacted him in a romance chatroom and the introduction of that false testimony violated Deal's right to due process, Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972), but Jones acknowledged during cross-examination that he had been mistaken and, in the light of overwhelming evidence of Deal's guilt, it is unlikely that Jones's earlier misstatement affected the jury's judgment, see United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995). Second, Deal argues that the district court should have instructed the jury about the mandatory minimum sentences that Deal faced, but he acknowledges the controlling authority that "'the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence,'" United States v. Thigpen, 4 F.3d 1573, 1577 (11th Cir. 1993) (quoting United States v. McCracken, 488 F.2d 406, 423 (5th Cir. 1974)). We are

8

bound by that precedent unless it is overruled by the Supreme Court or this Court sitting en banc.  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010).

We **AFFIRM** Deal's convictions.